In the Matter of **BURGESS MINING AND CONSTRUCTION CORPORATION, Debtor.**

**Bankruptcy No. 82–04105.**

United States Bankruptcy Court, N.D. Alabama, S.D.

Nov. 26, 1985.

Jack Rivers, U.S. Trustee.

André M. Toffel, Trustee.

Daniel W. Wainscott, for trustee.

Cindy Simmons, Richard E. O'Neal, Asst. U.S. Attys., for U.S.

Robert B. Rubin, for A.E. Burgess, Sr.

Charles L. Denaburg, for debtor.

## FINDINGS OF FACT AND OPINION

STEPHEN B. COLEMAN, Bankruptcy Judge.

Although this matter involves only a contest of claim, it raises issues and liabilities for withholding tax assessable against several persons and especially against the debtor in this case. Burgess Mining and Construction was incorporated in 1955. Its principal business was originally the mining of coal. The history of the company demonstrates that it was the product and development of the genius and managerial skill of its founder, A.E. "Pee Wee" Burgess, who shaped its destiny and dominated its policies from its inception.

Under Mr. Burgess' management it had a meteoric career branching off into real estate development, construction and other side line businesses and corporate interests and became a veritable industrial giant. It was always a family corporation and Mr. Burgess took into his care and association various members of his family, including his children and brother. As the empire flourished and grew more prosperous, so did the family. This prosperity may have gone on indefinitely except for bad times and the contratemps that frequent the coal industry. The empire began to crumble and Burgess Mining fell into financial difficulties leading finally to the Chapter 11 petition filed in this court on the 15th day of July, 1982.

Hopes for a successful reorganization began quickly to fade and conversion to Chapter 7 occurred on January 3, 1984.

Burgess Mining was operated as a union shop which soon resulted in a judgment for $540,540.78 against the corporation. The debtor was both unwilling and unable to cope with this judgment and with the burdens imposed by the union contracts.

It was determined, possibly as part of the corporate participation of the officers and directors of Burgess Mining, that in order to stay in business and continue the mining and sale of coal, that a new entity had to be created separate and apart from Burgess Mining and free from liability or responsibility to the union.

According to the testimony, exhibits and evidence offered in this case, certain officers of Burgess Mining formed a new corporation known as Cahaba Resources, Inc. A.E. Burgess as an individual furnished $90,000 of his own funds to get the new corporation started, which was the capital with which it began. The scheme was to avoid and defeat the judgment of the United Mine Workers of America and operate a non-union shop. To this end, leases of equipment, mining rights and mining permits were extended from the old corporation to the new.

Virtually the same officers and directors who served the old corporation served the new, according to the testimony of A.E. Burgess. He became the president and Thomas Terrell secretary of the new corporation. Burgess Mining continued to own the title and control of all the mining equipment and leases, with the transfer of the use and enjoyment of these by lease to the new company. Royalties, rents and charges as landlord and tenant passed between the companies. For all practical purposes, Cahaba Resources occupied the same position in mining, producing, processing and selling the coal right in the same pits and spots the old corporation had used.

However, there was maintained a complete separation and division of the new business from the old. There is no evidence that as a corporate entity Burgess Mining controlled and dominated or in effect managed as a corporate function the new business. Cahaba Resources did not do business in Burgess Mining's name nor did it create debts nor was it subservient to Burgess Mining. According to the undisputed testimony and by his own statement, A.E. Burgess as an individual, controlled, dominated and guided the destiny of the new corporation.

Separate books were maintained, separate tax returns filed, and Cahaba Resources operated and did business wholly on its own under the domination of A.E. Burgess. In fact, Cahaba Resources had

its own tax identification number, paid its own taxes, filed its own returns and no effort was made by the Internal Revenue Service to object to this procedure until it became apparent that the trustee in bankruptcy in liquidating the assets of Burgess Mining had accumulated almost one million dollars and that Cahaba Resources had no assets and no funds. The trustee paid and settled under proper returns all tax liabilities of Burgess Mining.

On the 8th day of February, 1984, the Internal Revenue Service filed claim number 63 for the sum of $349,089.20 against the bankruptcy estate of the debtor. No attempt administratively was previously made to reassess Cahaba Resources' taxes against Burgess Mining except by the claim filed. The Internal Revenue Service filed on October 29, 1985, a new claim numbered 106 for $410,593.56, and what is said here as to claim number 63 applies to it. The trustee promptly challenged by contest the filing of the claim and refused to pay it.

It is this contest that is now before the court which involves an interpretation of 26 USCA §§ 3102(a), 3402(a), 6671(b), 6672, and 7501, and represents an attempt by the Internal Revenue Service to fix the responsibility on Burgess Mining for payment of the taxes of Cahaba Resources. *See Lesser v. United States*, 368 F.2d 306 (2nd Cir.1966), and *United States v. Strebler*, 313 F.2d 402 (8th Cir.1963).

This court finds no evidence that Burgess Mining by corporate act ever assumed or acquired any responsibility for the payment of the tax. Rather, the evidence in this case points to A.E. Burgess as a responsible person as defined in the case of *Anderson v. United States*, 561 F.2d 162, 165 (8th Cir.1977). It was the willfulness of A.E. Burgess (and not Thomas Terrell or A.E. Burgess, Jr.), which was responsible for the failure of Cahaba Resources to pay the withholding taxes when it had the funds available. Burgess dominated his children and directed their actions. It is apparent that in some cases he may have taken out of the corporation funds for his own benefit, which was wrongfully done. He so dominated and imposed his will upon the other officers as to remove from them the will power, freedom of action and ability to pay the taxes. It was the act of the individual, A.E. Burgess, acting for his own personal gain rather than the corporate act of Burgess Mining, through its directors, officers and stockholders that resulted in Cahaba Resources' failure to pay.

This court does not find that Cahaba Resources was a mere "instrumentality" of Burgess Mining. If anything, it was the instrumentality of A.E. Burgess whose willfulness caused the failure to at least in part discharge the tax liability of Cahaba Resources.

This matter has been bitterly contested. The trustee has stoutly refused payment of funds of creditors for another corporation's tax. The court finds that the case principally relied on by the trustee is *Moline Properties, Inc., v. Commissioner*, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943), which is very much in point and should be followed in this case and accordingly disallows and denies the claim of the Internal Revenue Service. A separate order will be so entered.